**ACCENT BUILDERS COMPANY, INC. and St. Paul Fire and Marine Insurance Company, Appellants,**

v.

**SOUTHWEST CONCRETE SYSTEMS, INC., Appellee.**

**No. 05–82–01478–CV.**

Court of Appeals of Texas, Dallas.

Aug. 28, 1984.

Rehearing Denied Oct. 19, 1984.

Eric W. Buether, Douglas A. Cawley, Johnson & Swanson, Dallas, for appellants.

Donald F. Hawbaker, Winstead, McGuire, Sechrest & Minick, Dallas, for appellee.

Before STOREY, SPARLING and GUILLOT, JJ.

STOREY, Justice.

Accent Builders Company, Inc., a general contractor, terminated its subcontract with Southwest Concrete Systems, Inc., relying on a provision in the subcontract which authorized termination for convenience, that is, without cause. Accent later announced to Southwest, and at trial asserted by way of defense, that the termination was for cause, that is, failure to perform in a good and workmanlike manner. The question presented on appeal is whether Accent is bound by and limited to its first announced reason for the termination. We hold that it is not so limited, and, consequently, that the part of the case dealing with this issue was erroneously submitted. We hold further that Southwest's conversion claim against Accent was fully developed and properly submitted. We therefore reverse and remand in part and affirm in part.

## THE CONTRACT CLAIM

Accent was the general contractor for the construction of a banking complex in Dallas. The concrete work on the complex was subcontracted to Southwest. During the course of construction, several disputes arose between Accent and Southwest as to the quality of some of Southwest's work. With knowledge of certain claimed defects in the concrete work and of claimed failure to follow plans and specifications by Southwest, Accent nevertheless terminated the subcontract initially for its convenience rather than for cause. The termination was by letter dated January 19, 1982, in which Accent announced that the termination was for its convenience as authorized by article 8 of the subcontract. The next day, January 20, 1982, Accent sent Southwest a letter explaining that Accent was not confining itself to termination under the terms of article 8 and that Accent's

reasons for terminating the contract included Southwest's failure to perform the concrete work in a good and workmanlike manner.

The precise question presented here has not been addressed by Texas courts. In urging affirmance, Southwest argues that Accent made an election to terminate under article 8 of the contract, authorizing it to terminate for convenience, and, having made the election, Accent should be limited to the remedies provided by the contract. Alternatively, Southwest contends that article 8 sets forth an option granted by it to Accent and, having exercised the option to terminate under the contract, Accent was limited to the remedies afforded by article 8. Under the circumstances here presented, we cannot agree with either of these contentions.

Article 8 is an inartfully drawn provision more closely related to a manufacturing and sales enterprise than to a construction project. Article 8 states:

8. TERMINATION: Buyer may terminate this purchase order for its convenience at any time in whole or in part as to undelivered products, in which event Buyer and Seller will negotiate an equitable settlement payment for the terminated portion consisting of Seller's cost to date of termination, including an allowance for obsolescence, rework or scrappage, but only for materials in process within Seller's ordinary manufacturing cycle required to meet the delivery schedule plus a reasonable profit thereon, less any value hereof to Seller, but in no event shall such payment exceed the amount which would have been payable hereunder for such terminated portion, if this order had not been so terminated. Buyer shall have the right to acquire any inventory relating to this order in the hands of Seller at the time of termination.

Neither party claims the language to be ambiguous, however, and its effect on this transaction seems clear. By terminating for convenience, Accent freed itself from exposure to damages which might arise out of a wrongful termination. The article anticipated that, upon termination, the parties would "negotiate an equitable settlement" limited to Southwest's costs for labor and materials actually expended plus a reasonable profit less an allowance for rework. No allowance was made for cost of completion. Southwest's suit against Accent sought recovery of its costs plus a reasonable profit.

■ Accent defended the action on the theory that it had terminated for cause, and thereby placed in issue the matter of substantial performance and the resulting question of alternative damages set down in *Turner, Collie and Braden, Inc. v. Brook Hollow, Inc.*, 642 S.W.2d 160 (Tex. 1982). Accent justified its theory of defense by its letter sent the next day after its first letter of termination when it notified Southwest that the contract was terminated for cause.

The case was submitted to the jury in terms of the article 8 termination for convenience and, in accordance with jury findings, Southwest recovered its costs expended plus a reasonable profit less certain rework expenses. No issue was submitted regarding the cost of completion. We conclude that the case was erroneously submitted, albeit there was a jury finding that Accent intended to terminate for convenience.

■ It appears to be well settled that upon breach of a contract a party may pursue any remedy which the law affords in addition to the remedy provided in the contract. The fact that the contract provides a particular remedy does not mean that remedy is exclusive unless it is declared to be or it is clearly indicated. *Vandergriff Chevrolet Company, Inc. v. Forum Bank*, 613 S.W.2d 68, 70 (Tex.Civ. App.—Fort Worth 1981, no writ); *Tabor v. Ragle*, 526 S.W.2d 670, 676 (Tex.Civ.App.— Fort Worth 1975, writ ref'd n.r.e.); *see Nunn v. Brillhart*, 242 S.W. 459, 461 (1922). Here there is no contention that article 8 was or was intended to be an exclusive remedy. We perceive no rationale favoring a different rule merely be-

cause the party has announced his reliance upon one remedy and later relies upon another. This, of course, assumes that the terminating party has not acted in bad faith and also that the terminated party has not changed its position in reliance upon the first announced remedy or reason. This is the rule adopted by the RESTATEMENT (SECOND) OF CONTRACTS, § 248 (1979).

■ In illustrating the effect of the rule, the Restatement recites facts identical to those presented the Supreme Judicial Court of Massachusetts in *New England Structures, Inc. v. Loranger*, 354 Mass. 62, 234 N.E.2d 888 (1968). There the court held, as we do, that absent bad faith or a change of position a party is "not prevented from relying upon one good defense among others urged simply because he has not always put it forward." *Id.* 234 N.E.2d at 892.

■■ Thus under our holding the question for the jury was not whether Accent intended to terminate for convenience, but instead whether it acted in bad faith or whether Southwest changed its position in reliance. Absent a finding on one or both of these issues, Accent was entitled as a matter of law to its issues pertaining to termination for cause. Accordingly, we reverse and remand this case for retrial of the contract claim. In view of our holding, we do not reach the points of error regarding attorneys' fees, prejudgment interest, and the admissibility of certain invoices, but also remand these issues for proper determination upon retrial of the contract claim.

## THE CONVERSION CLAIM

Accent also contends that the court erred in submitting a special issue concerning Accent's conversion of equipment and materials owned by Southwest. Specifically, Accent complains that the special issue assumed Southwest's ownership of the property and that such an assumption was an impermissible comment on the weight of the evidence. The special issue asked the jury:

Do you find from a preponderance of the evidence that on January 19, 1982, that defendant Accent took possession of *any* tools, equipment, material or supplies owned by plaintiff Southwest without making payment therefor and that defendant Accent thereafter used or utilized the same, if any, for the purpose of continuing the construction project or otherwise used the same for its (defendant Accent's) own purposes?

Answer "Yes" or "No." (emphasis added)

The jury answered the special issue "Yes," and judgment was entered against Accent for conversion of Southwest's property.

■ We do not agree that the issue assumed any disputed fact. The word "any" necessitated that the jury find ownership by Southwest before it could give a "Yes" answer to the issue. The issue does not state that any property necessarily was owned by Southwest, but conversely, it invites the jury to find ownership if such was established by a preponderance of the evidence.

■ Accent also contends that the special issue does not establish a wrongful act, and, thus, the jury's positive answer to the issue does not support a judgment against Accent for conversion. Conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Waisath v. Lacks Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971). Accent, however, only objected to this special issue on the ground that it assumed Southwest's ownership of the property. Accent did not object as to the court's failure to ask the jury whether Accent's taking possession of the property was wrongful. "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." TEX.R.CIV.P. 274 (Vernon 1976). When one or more of the elements of a ground of recovery are submitted to the jury, and one or more of the elements are omitted, a failure to object to the omission waives a jury trial upon the omitted

element or elements, and any complaint is deemed waived. TEX.R.CIV.P. 274 (Vernon 1976) & 279 (Vernon 1977); *Cracker v. City Transportation Company of Dallas,* 316 S.W.2d 447, 450 (Tex.Civ.App.—Texarkana 1958, writ ref'd n.r.e.); 3 McDonald, Texas Civil Practice § 12.36.4 (rev. 1983). Therefore, the omitted issue is deemed found by the court in support of the judgment. TEX.R.CIV.P. 279 (Vernon 1977); *City of Houston v. Black,* 571 S.W.2d 496 (Tex.1978); *Presslor v. Kandy,* 611 S.W.2d 953, 956-57 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.).

▇▇▇ Accent also complains of the court's failure to submit the following special issue which it requested:

Do you find from a preponderance of the evidence that Accent and Southwest intended that the materials supplied by Southwest to the job and presently remaining on the project were to be the property of Southwest Concrete Systems?

Accent contends that this issue was supported by pleadings and by evidence which showed that Accent "was entitled to possession of the materials Southwest alleged were converted because the Concrete Subcontract provided that Southwest was to provide all necessary materials and supplies to perform the concrete work." The requested issue, however, does not ask whether Accent was entitled to possession of the materials under the contract. Instead, the issue would have inquired of the jury whether the materials were intended to be the property of Southwest. While an affirmative answer would have been favorable to Southwest, the reverse would not be true—a negative answer to the issue would not have established Accent's entitlement to possession of the materials. Thus, the special issue would not have submitted a controlling issue to the jury. *See Mayflower Investment Co. v. Stephens,* 345 S.W.2d 786, 789 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). It is not error to refuse to submit a special issue if, when answered, it would have no effect on the judgment. *Mayflower,* 345 S.W.2d at 791; *Hobbs v. Grant,* 314 S.W.2d 351, 358 (Tex. Civ.App.—Austin 1958, writ ref'd n.r.e.); *see Dallas Building and Repair v. Butler,* 589 S.W.2d 794, 796 (Tex.Civ.App.—Dallas 1979, writ dismissed).

Accent next contends that the court erred in submitting special issues on malice because there is no evidence that Accent acted maliciously in converting Southwest's property and that the court erred in not granting a new trial because the evidence is insufficient to support the jury's answers to the special issues on malice. We disagree.

▇▇▇ Accent correctly states that exemplary damages are not allowed for an act that is merely unlawful. There must also be a showing that the act was wanton or malicious. *See Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943); *First Security Bank and Trust v. Roach,* 493 S.W.2d 612, 617 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). However, "[i]t is not necessary to prove affirmative malice or ill will to support an award of exemplary damages. Malice may be implied from a wrongful act which is intentional and done without just cause or excuse. Malice may be inferred from a wrongful act done intentionally in violation of [a party's] rights...." *Gardner v. Kerley,* 613 S.W.2d 795, 796 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

▇▇▇ On the date Accent terminated the contract, Southwest was also employed as the concrete subcontractor on four other unrelated projects. In order to complete the work under its contract with Accent, Southwest had delivered materials or equipment from at least three of these other jobs. When Accent terminated the contract, it refused to allow Southwest to re-enter or remove anything from the construction site. Accent went as far as calling the Dallas Police to prevent Southwest from removing its property. Accent also refused to investigate to determine wheth-

er any of the disputed property belonged to Southwest. Southwest had charged the costs of the materials delivered from other jobsites to the jobs from which they were taken and intended to return those materials to other projects once their use at the bank was completed. We hold the evidence to be sufficient to submit the special issues to the jury and to support the jury's answers to those issues.

 Accent further contends that the award of $60,000 for exemplary damages was excessive. The jury found $75,000 should be paid by Accent as exemplary damages, but the court ordered a remittitur of $15,000 and entered judgment for $60,000. By three crosspoints, Southwest argues the order of remittitur was error. Although exemplary damages should be reasonably proportioned to actual damages, *Southwestern Investment Co. v. Nelley*, 452 S.W.2d 705, 707 (Tex.1970), there is no set rule as to the ratio allowable between actual and exemplary damages. This determination must be made on a case-by-case basis. *First Security Bank and Trust v. Roach*, 493 S.W.2d 612, 619 (Tex. Civ.App.—Dallas 1973, writ ref'd n.r.e.). Furthermore, an appellate court should not disturb an order of remittitur unless it finds that the order was manifestly unjust. *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835, 840–41 (1959). We are not persuaded that the court's order of remittitur was manifestly unjust. Similarly, in response to Accent's claim of excessiveness, we are not persuaded that the award of $60,000 was manifestly unjust. We are reluctant to substitute our notion of excessiveness for both that of the jury and of the trial court. Consequently, we decline to disturb the judgment as to the award of exemplary damages.

We affirm that part of the trial court's judgment awarding Southwest its damages for conversion, and reverse and remand the judgment awarding damages for breach of contract. Costs of appeal are taxed equally to the parties.