**ROOF SYSTEMS, INC., Appellant**

v.

**JOHNS MANVILLE CORPORATION and Gilbane Building Company, Appellees.**

**No. 14–02–00083–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 9, 2004.

Joseph S. Yardas, Joseph H. Pedigo, Houston, for appellants.

Arthur Val Perkins, Charles Patrick Waites, Michael Hendryx, Houston, Jason Robert Nassour, Austin, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and CHARLES W. SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Roof Systems, Inc., sued Gilbane Building Company for breach of a roofing contract. Roof Systems also sued Johns Manville Corporation ("JMC") for tortious interference with the contract, negligent misrepresentation, and Deceptive Trade Practices Act violations. The trial court granted summary judgment in favor of Gilbane and JMC on all Roof Systems's claims, and this appeal followed. We affirm, in part, and reverse and remand, in part.

### I. BACKGROUND

Gilbane contracted to build two schools for the Houston Independent School District ("HISD"). By written agreement, Gilbane subcontracted the roofing and sheet metal work for both schools to Roof Systems. The subcontract required Roof Systems to provide HISD a ten-year "No Dollar Limit" warranty on the roof systems as a condition of final payment.

Subsequently, JMC roofing materials

were selected for both schools.[1] However, JMC asserted that it would not issue its "Gold Shield Roofing System Guaranty" unless the roof systems were installed by a JMC-certified installer. It is undisputed that Roof Systems has never been a JMC-certified installer. However, Roof Systems claims it arranged for Total Roofing Services, Inc., a JMC-certified installer, to install the roof systems. According to Roof Systems, it was assured by JMC that the warranty would issue if a JMC-certified "sub-subcontractor" installed the roof systems. To the contrary, JMC denies that it approved Roof Systems's proposed "sub-subcontractor" arrangement. JMC claims it has a "roofer of record" policy; under this policy, it will issue a warranty only if the JMC-certified installer also has the roofing contract with the general contractor.[2]

In any event, JMC eventually informed Gilbane that the warranty would not issue under any circumstances. On January 14, 1999, Gilbane sent Roof Systems a letter stating:

> consider this your 48 hour formal notice of non-conformance of your contractual requirements. We were contacted by [JMC] who stated that they will not provide a warranty if we contract with your company ... Should you not be able to provide both a written acknowledgement from the manufacturer warranting the work per plans and specifications ... within the next 48 hours, we will contract with an approved contractor to fulfill your contract obligations and hold you responsible for any additional costs.

Roof Systems received the letter on Saturday, January 16, 1999. In response, Scott Jarnigan, its president, contacted several JMC representatives to obtain an acknowledgment that the warranty would issue if a JMC certified "sub-subcontractor" installed the roof systems. He claims he received conflicting responses. Nevertheless, he then asked Gilbane if roofing materials from an alternate manufacturer would be acceptable. By letter dated January 18, 1999, Gilbane agreed to forward this request to the architect but stated it was not optimistic about the response. Gilbane reminded Roof Systems that the forty-eight hour deadline imposed in its January 14, 1999 letter remained in effect.

On January 19, 1999, JMC delivered a letter to Total Roofing stating generally that Total Roofing is qualified to convey JMC's warranty "in accordance with the Johns Manville Certified Roofing Contractor (JMCRC) agreement," and the proposed roof systems are eligible for the warranty "when installed in accordance with JM's Guarantee and Specification requirements." A copy of this letter was sent to Gilbane. The parties disagree whether JMC's letter constituted an acknowledgment that the warranty would issue if Total Roofing installed the roof systems under Roof Systems's proposed "sub-subcontractor" arrangement. Regardless, Gilbane received the letter after the forty-eight hour deadline had passed. On the same day, Roof Systems received written notice from Gilbane that it was contracting with another company to install the roof systems because Roof Systems failed to provide a written warranty acknowledgment.

1. Pursuant to the subcontract, Roof Systems submitted specifications of roofing materials from different manufacturers. At the project architect's insistence, JMC roofing materials were chosen.

2. It is undisputed that Roof Systems—not Total Roofing—had the roofing contract with Gilbane.

Roof Systems sued JMC for tortious interference with contract, negligent misrepresentation, and DTPA violations. JMC filed two separate motions for summary judgment: one addressing the tortious interference claim,[3] and one addressing the negligent misrepresentation and DTPA claims. The trial court granted both motions. Roof Systems also sued Gilbane for breach of contract. The trial court granted a no-evidence motion for summary judgment filed by Gilbane. The trial court then signed a final judgment that Roof Systems take nothing against JMC and Gilbane.[4]

## II. JMC's Motion For Summary Judgment

In its first three issues, Roof Systems contends the trial court erred in granting summary judgment in favor of JMC.

### A. Standard of Review

A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of each of the plaintiff's theories of recovery, or (2) pleads and conclusively establishes each essential element of an affirmative defense thereby rebutting the plaintiff's cause of action. *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 159 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979)). Our standard for reviewing summary judgments is well-established. *Id.* (citing *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49

(Tex.1985)). The summary judgment movant has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* In deciding whether there is a material disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

### B. Roof Systems's Claims

#### 1. Tortious Interference with Contract

In its first issue, Roof Systems contends the trial court erred in granting summary judgment on its tortious interference with contract claim. To recover for tortious interference with contract, a plaintiff must prove (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) that the act was a proximate cause of the plaintiff's damages, and (4) actual damages or loss. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996). Here, the allegedly tortious interference was JMC's statement to Gilbane that it would not issue the warranty.

In its motion for summary judgment, JMC does not contend there are no fact issues relative to the elements of Roof Systems's tortious interference claim.[5] Instead, JMC asserts the affirmative defense of legal justification. *See id.* (recognizing justification is an affirmative defense to tortious interference with contract). JMC

---

**3.** JMC also asserted the statute of limitations in this motion, but summary judgment was not granted on that ground, and limitations is not an issue on appeal.

**4.** Roof Systems also sued Tom Soder, a JMC employee, individually, Total Roofing, and David Lawrence of Total Roofing, but they were later non-suited. In the final judgment,

the court ordered that Roof Systems take nothing against Tom Soder, David Lawrence, and "Total Roofing, Inc." Roof Systems does not appeal from that portion of the judgment.

**5.** JMC concedes for purposes of appeal that its statement caused Gilbane to terminate the contract.

contends it was legally justified in telling Gilbane it would not issue the warranty because the statement was true based on its "roofer of record" policy. *See Fin. Review Servs. v. Prudential Ins. Co. of Am.*, 50 S.W.3d 495, 505 (Tex.App.-Houston [14th Dist.] 1998), *aff'd*, 29 S.W.3d 74 (Tex.2000) (stating that giving truthful information to a third party does not constitute improper interference with contractual relations); RESTATEMENT (SECOND) OF TORTS § 772 (1979);[6] *see also Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 561 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (citing section 772 and recognizing party is justified to interfere with prospective business relationship by providing truthful information).

■■■ On appeal, JMC also argues it was legally justified to tell Gilbane it would not issue the warranty because it was entitled to change its policy at any time,[7] and it had no obligation to issue the warranty.[8] We question whether mere recantation of an earlier statement that the warranty would be issued to a third party (HISD) constitutes a willful and intentional act of interference. However, JMC presented only the "truth" defense in its motion for summary judgment. A motion for summary judgment must expressly state the grounds therefor. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). We are limited to those grounds expressly set forth in the motion to determine whether the summary judgment was properly granted. *McConnell*, 858 S.W.2d at 343. Nevertheless, JMC asserts we may consider its other grounds because they are encompassed within the general "legal justification" ground raised in its motion, and Roof Systems failed to specially except. We disagree.

■■■ A special exception is required if a non-movant wishes to complain on appeal that the movant's grounds were unclear or ambiguous. *Id.* at 342. However, when the motion for summary judgment clearly presents certain grounds but not others, a non-movant is not required to except. *Id.*[9] Here, Roof Systems was not required to specially except because JMC presented one specific, narrow ground for summary judgment: it was legally justified in telling Gilbane it would not issue the warranty because the statement was true based on its "roofer of record" policy.[10] Therefore,

---

6. Section 772 provides "One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice." RESTATEMENT (SECOND) OF TORTS § 772.

7. Specifically, pursuant to its Certified Roofing Contractor Agreement, JMC asserts that it could change its policy unless it had already accepted a complete contract award notice and half the cost of the warranty, which had not occurred in this case.

8. Specifically, pursuant to its Certified Roofing Contractor Agreement, JMC asserts that it was not obligated to issue a warranty until the certified installer met a number of conditions, and neither Roof Systems nor Total Roofing had met the conditions.

9. As the Texas Supreme Court recognized, "Why should a non-movant be required to except to a motion expressly presenting certain grounds and not others?" The only effect of such a rule would be to alert the movant to additional unasserted summary judgment grounds. *McConnell*, 858 S.W.2d at 342.

10. The purpose of the requirement that a motion for summary judgment state specific grounds is to provide the opposing party with adequate information for opposing the motion and define the issues for purposes of summary judgment. *See Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex.1978),

we will consider whether JMC was entitled to summary judgment on this ground only.

In support of its motion for summary judgment, JMC presented the affidavit of its employee, Tom Soder. Soder averred that JMC will provide its warranty to a JMC-certified applicator, and the applicator must be the "roofer of record" as shown in the agreement between the general contractor and the roofing subcontractor. Soder further averred that JMC was unable to provide Roof Systems the warranty because it was not a JMC-certified applicator. JMC also presented the deposition of Dave Carl, its representative in charge of installer certification. Carl was unaware of any circumstances where JMC issued a warranty when the work was performed by a "sub-subcontractor." He explained that issuing a warranty in such circumstances would violate JMC's "roofer of record" policy, although he admitted the policy is unwritten. He testified that Roof Systems's proposed arrangement would satisfy JMC's policy only if Total Roofing had the roofing contract with Gilbane.[11]

In contrast, there is evidence a JMC representative stated that as long as the roof systems were installed by a JMC-certified installer, JMC would issue the warranty even if Roof Systems had the contract with Gilbane. In his deposition, Jarnigan testified that before he submitted proposed roofing manufacturers to Gilbane, he contacted JMC representatives and was told the warranty would issue if he "sub-subcontracted" to a certified installer.[12] Jarnigan further testified that RSI, a JMC distributor, told him it had also confirmed with JMC that the warranty would issue as long as Roof Systems subcontracted to a certified installer.

However, after JMC material was chosen, Soder informed Gilbane the warranty would not issue. Subsequently, Jarnigan, several Gilbane representatives, and Soder had a teleconference. According to Jarnigan, during the teleconference, Soder reiterated that the warranty would not issue. Subsequently, Soder said he had not understood Roof Systems would be subcontracting to a certified applicator, and as long as Roof Systems was subcontracting to a certified applicator, the warranty would issue.[13]

After this teleconference, Soder again informed Gilbane that the warranty would not issue under any circumstances, prompting Gilbane's January 14, 1999 letter demanding that Roof Systems provide a warranty acknowledgment within forty-eight hours. According to Jarnigan, he called Soder who said he "went all the way to legal," and under no circumstances would JMC issue the warranty even if

---

overruled on other grounds by *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 673 (Tex.1979). Here, JMC's claims that it could change its policy and had no obligation to issue the warranty because certain conditions were not met are quite different from its claim that its statement to Gilbane was true based on the "roofer of record" policy. As Roof Systems asserts, it should not be forced to challenge these alternate grounds on appeal when it had no opportunity to present controverting evidence.

11. Carl further stated that he explained JMC's policy to Jarnigan with the following, "[A]s I understand it, Total Roof Services is going to be the contractors to put the roof on and the contractor of record and the whole nine yards." However, Carl also testified that he suspected the warranty might issue under Roof Systems's proposed arrangement regardless of the "roofer of record" policy because JMC would not necessarily "keep track" of who the general contractor is on a particular project.

12. Jarnigan testified he "thinks" Dave Carl was one of the JMC representatives to whom he spoke.

13. Jarnigan reiterated the contents of this conversation in his affidavit.

Roof Systems subcontracted to a certified applicator. However, Jarnigan testified that he then contacted JMC's home and regional offices and was told his proposed arrangement *was* acceptable as long as the "sub-subcontractor" was a certified applicator.[14] Thus, according to Jarnigan, he received conflicting responses when he tried to obtain a warranty acknowledgment as demanded by Gilbane.

In addition to this testimony, Roof Systems relies on Jarnigan's affidavit to attack the motion for the summary judgment. Jarnigan swore he has been the owner of two other companies that *were* JMC certified installers but was never aware of any "roofer of record" policy, and if it did exist, it was never enforced. However, his lack of knowledge does not necessarily refute the existence of the "roofer of record" policy. Finally, Roof Systems argues that the January 19, 1999 letter from JMC to Total Roofing is evidence that JMC intended to issue the warranty.[15] However, this letter merely proves that Total Roofing was a certified JMC-installer and qualified to convey the warranty if it complied with JMC's roofing contractor agreement and the roof systems met certain JMC requirements. The letter is not assurance that the warranty would issue in this particular case under Roof Systems' proposed arrangement. Nevertheless, Jarnigan's testimony creates a fact issue on whether the warranty would issue.

Jarnigan's testimony regarding (1) JMC's representations when he initially inquired about the warranty, (2) Soder's assurance during the teleconference, and (3) the representations by at least some JMC representatives when Jarnigan tried to obtain the warranty acknowledgment, raises a genuine issue of material fact on the truthfulness of JMC's statement that it would not issue the warranty. Accordingly, the trial court erred in granting summary judgment on Roof Systems's tortious interference claim against JMC. Roof Systems's first issue is sustained.

### 2. NEGLIGENT MISREPRESENTATION

■ In its second issue, Roof Systems contends that summary judgment was improper on its negligent misrepresentation claim. The elements of a claim for negligent misrepresentation are as follows: (1) the representation is made by a defendant in the course of his business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). In its motion for summary judgment, JMC challenged whether it had supplied false information.[16] JMC argued that Roof Sys-

---

14. Jarnigan's testimony is somewhat vague as to the identity of these representatives although apparently Carl was one of them. Nevertheless, his testimony is evidence that at least some JMC representatives intended that the warranty would issue under Roof Systems's proposed arrangement even after Soder told Jarnigan it would not issue.

15. Roof Systems terms the letter a "warranty acknowledgment letter."

16. Although JMC asserts Roof Systems failed to properly plead a cause of action for negligent misrepresentation, it moved for summary judgment on the claim out of an abundance of caution and concedes it had fair notice of the claim. Therefore, we will treat the claim as if it had been raised by the pleadings and address the summary judgment on the claim. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991) (recognizing rule that unpleaded claims tried by express or implied consent are treated as if

tems's negligent misrepresentation claim was impermissibly based on a promise of future conduct—whether it would issue a warranty when the roofing work was complete.

■ The "false information" contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct. *See Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim. *See Miksch v. Exxon Corp.,* 979 S.W.2d 700, 706 (Tex. App.-Houston [14th Dist.] 1998, pet. denied). The plaintiff must prove that the defendant misrepresented an existing fact in the course of the defendant's business. *Id.*

Roof Systems contends JMC misrepresented an existing fact by telling Gilbane it had a "roofer of record" policy which would preclude it from issuing the warranty. As we previously discussed, JMC refers to its "roofer of record" policy as proof that the statement to Gilbane was true. However, there is no evidence that JMC ever told Gilbane it had a "roofer of record" policy. Instead, the alleged misrepresentation is JMC's statement to Gilbane that it would *not* issue the warranty.

The evidence establishes that this statement was a representation regarding a future act. According to the contract between Gilbane and Roof Systems, Roof Systems agreed to provide the warranty "as a condition precedent to final payment." Roof Systems apparently does not dispute that the warranty would not issue until the roof systems were installed. Therefore, while there is a fact issue on the truthfulness of JMC's statement, it is, nonetheless, a representation regarding future conduct. *See Allied Vista, Inc.,* 987 S.W.2d at 141 (holding defendant's representations that it would provide plaintiff the equipment needed to start a plant and pay plaintiff a salary while starting the plant did not support negligent misrepresentation claim because they were not misrepresentations of existing fact).[17]

Therefore, JMC negated the "false information" element of the negligent misrepresentation claim as a matter of law. Accordingly, the trial court did not err in granting summary judgment on Roof Systems's negligent misrepresentation claim. Roof Systems's second issue is overruled.

### 3. DTPA VIOLATIONS

■ In its third issue, Roof Systems argues the trial court erred in granting summary judgment on its DTPA claim. Specifically, Roof Systems urges that fact issues exist as to whether Roof Systems qualifies as a consumer under the DTPA. *See Brown v. Bank of Galveston, N.A.,* 963 S.W.2d 511, 513 (Tex.1998) (recognizing plaintiff must establish consumer status as initial element of a DTPA claim).

---

raised by the pleadings should apply to issues raised in a motion for summary judgment).

**17.** Further, JMC's representation concerned future conduct because issuance of the warranty was dependent upon a condition precedent, although the parties disagree on what the condition precedent was. Nevertheless, accepting Roof Systems's version of the facts as true, issuance of the warranty was, at a minimum, precedented upon installation by a JMC-certified installer. *See Airborne Freight Corp. Inc. v. C.R. Lee Enters.,* 847 S.W.2d 289, 298 (Tex.App.-El Paso 1992, writ denied) (concluding employer's statement to independent contractor, "as long as you do your job, you'll have a job" did not support negligent misrepresentation claim, although contractor was later fired, because it was a promise of future conduct qualified by a condition precedent).

Under the DTPA, a consumer is defined as an individual, partnership, or corporation who seeks or acquires, by purchase or lease, any goods or services. TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 2002); *see Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). To qualify as a consumer, a plaintiff must prove that (1) it sought or acquired the goods or services by purchase or lease, and (2) the goods or services form the basis of the complaint. *Cameron*, 618 S.W.2d at 539; *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 406–07 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.). If either requirement is lacking, the person aggrieved by a deceptive act or practice must rely on the common law or some other statutory provision for redress. *Cameron*, 618 S.W.2d at 539. When the underlying facts necessary to determine consumer status are not in dispute, consumer status under the DTPA is a question of law. *Moran*, 946 S.W.2d at 406.

In its motion for summary judgment, JMC asserted that Roof Systems is not a consumer because its complaint is not based on any goods or services sought or acquired from JMC. Instead, the complaint is based on JMC's refusal to give a warranty. In its response, Roof Systems merely countered that it sought goods—roofing materials.[18] However, Roof Systems's response only addressed the first part of the consumer test—whether it sought or acquired goods or services, whereas JMC's motion for summary judgment addressed the second part of the test—whether Roof Systems's complaint is based on any goods or services sought or acquired.[19]

A refusal to sell goods or services is not a complaint based on the goods or services for purposes of DTPA consumer status. For example, in *Brittan Communications International Corp. v. Southwestern Bell Telephone Co.*, a reseller of telephone services complained that the defendant carrier wrongfully suspended billing and collection services it performed for the reseller and failed to reinstate the services. 313 F.3d 899, 902–03 (5th Cir. 2002). The court held the reseller did not qualify as a DTPA consumer despite the carrier's representation that the services would be reinstated because the reseller's complaint was not based on any problems with the quality of the billing or collection services themselves. *Id.* at 907–08. In *Malone v. E.I. Du Pont De Nemours & Co.*, the plaintiffs, who were engaged in the paint resale business, bought surplus paint from Du Pont and resold it in Lebanon. 8 S.W.3d 710, 712–13 (Tex.App.-Fort Worth 1999, pet. denied). They asserted a DTPA complaint against Du Pont for refusing to sell them any more paint despite

---

18. In its petition, Roof Systems only pled it is a consumer because it sought to purchase goods.

19. Both parties raise new arguments on appeal. Roof Systems now suggests it sought a service because the warranty was an integral, inseparable part of the roofing materials transaction, and it would not have sought the roofing materials if the warranty were not available. *See* TEX. BUS. & COM.CODE ANN. § 17.45(2) (Vernon 2002) (defining services under the DTPA to include those furnished in connection with the sale or repair of goods). However, a non-movant must expressly present to the trial court any reason that would defeat the movant's right to summary judgment by filing a written answer or response to the motion. TEX R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 341. In addition, JMC now argues Roof Systems is not a consumer because (1) it sought an intangible right—the status of a JMC-certified installer, (2) it was merely an incidental beneficiary of the warranty which would run directly to HISD, and (3) it never ordered any roofing materials. Even if we could consider all these new arguments, we need not do so because the ground JMC did present in its motion is meritorious.

previously representing it would sell them all its surplus paint. *Id.* at 713. They further complained that Du Pont told them the paint could no longer be shipped into Lebanon, but then sold the paint to someone else, who resold in Lebanon. *Id.* The court held that the plaintiffs were not DTPA consumers because their complaints were not based on any fault in the goods, but merely upon Du Pont's failure to sell as much as they wanted to buy. *Id.* at 715; *see also Footloose, Inc. v. Stride Rite Children's Group, Inc.*, 923 F.Supp. 114, 115–17 (N.D.Tex.1995) (holding shoe store was not a DTPA consumer because its complaint that shoe company discontinued selling it shoes was not based on any fault with the shoes, but only on discontinuation of the sales relationship).

Here, Roof Systems's DTPA claim is not a complaint about the terms or breach of any warranty.[20] Rather, Roof Systems complains that JMC refused to issue a warranty, and told Gilbane it would not do so, despite its previous representations.[21] As such, the complaint is not based on any goods or services that Roof Systems sought or acquired from JMC. *See Miller v. KFC Corp.*, No. Civ. A. 3:99–CV–1566–D, 1999 WL 820389, at *3–4 (N.D.Tex. Oct. 13, 1999) (holding plaintiffs were not DTPA consumers because complaint that fast food restaurant defendants refused to award them a franchise and made misrepresentations during the negotiations for

the franchise was not based on the goods or services they sought from defendants).

Therefore, Roof Systems was not a consumer under the DTPA as a matter of law, and summary judgment was proper on its DTPA claims. Accordingly, Roof Systems's third issue is overruled.

## III. GILBANE'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In its fourth and fifth issues, Roof Systems contends the trial court erred in granting Gilbane's no-evidence motion for summary judgment on Roof Systems's breach of contract claim.

### A. STANDARD OF REVIEW

After adequate time for discovery, a party, without presenting summary judgment evidence, may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* In reviewing a no-evidence summary judgment, we examine the record in the light most favorable to the nonmovant, looking to see if it presented more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements of its claim. *See Wal–Mart Stores, Inc. v.*

---

**20.** Roof Systems does not complain of any misrepresentations regarding the terms of a warranty, failure to honor a warranty, or breach of a warranty. *See, e.g., Jones v. Star Houston, Inc.*, 45 S.W.3d 350, 356–57 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (concluding car owner who complained that car dealer's warranty repairs further damaged the car was DTPA consumer); *Mahsha, Inc. v. Martinez*, No. 05–01–01275–CV (Tex.App.-Dallas June 17, 2002, no pet.) (not designated for publication), 2002 WL 1308781, at *2–4

(finding DTPA violation in car seller's failure to honor warranty to repair car).

**21.** Although JMC contends that Roof Systems's DTPA action is based solely on JMC's refusal to issue a warranty, in its petition, Roof Systems also complains about JMC's alleged representations that it would issue the warranty under Roof Systems's proposed arrangement. Nevertheless, these representations concern whether JMC would issue the warranty; they do not concern the terms or breach of the subject warranty.

*Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

## B. BREACH OF CONTRACT CLAIM

In its motion for summary judgment, Gilbane urged there is no evidence that (1) Roof Systems was able and ready to proceed with the contract, or (2) Gilbane breached the contract. Because the summary judgment order does not specify the grounds upon which the ruling was granted, we affirm the judgment on any meritorious theory. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

■ The following are the four elements of a breach of contract action: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Renteria v. Trevino*, 79 S.W.3d 240, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Roof Systems alleges that Gilbane breached the contract by terminating it. In its motion for summary judgment, Gilbane contended it properly terminated the contract because (1) Roof Systems failed to comply with the progress schedule;[22] (2) Roof Systems failed to perform any of the agreements contained in the contract;[23] and (3) the contract contained a termination for convenience clause. We find the third contention meritorious.

The termination for convenience clause provided:

9.4.1 Notwithstanding the above paragraph,[24] [Gilbane] reserves the right to terminate this Agreement for its convenience upon written notice to [Roof Systems]. In such instance, [Roof Systems] will be paid its share of the contract amount proportionate to the percentage of its work completed and other reasonable cancellation costs incurred as a result of said termination. No payments shall be made for anticipated overhead and profit. Prior to making any payments under this clause, [Gilbane] shall have the right to audit the records of [Roof Systems].

■ A termination for convenience clause allows termination with or without cause and bars a claim for wrongful termination. *See 4N Intern., Inc. v. Metropolitan Transit Auth.*, 56 S.W.3d 860, 863 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (citing *Accent Builders Co. v. S.W. Concrete Sys., Inc.*, 679 S.W.2d 106, 108–09 (Tex.App.-Dallas 1984, writ ref'd n.r.e.)). Quite simply, Gilbane was allowed to terminate Roof Systems's contract for convenience—with or without cause.

■ Nevertheless, Roof Systems contends Gilbane cannot rely on the termination for convenience clause because Gilbane specifically cited Roof Systems's failure to maintain the progress schedule in its termination notice. However, a general contractor is not bound by its first announced reason for terminating a subcontract absent bad faith by the general con-

---

**22.** The contract allowed Gilbane to terminate, upon forty-eight hours notice, should Roof Systems fail to maintain Gilbane's progress schedule. The contract further provided that "time is of the essence."

**23.** The contract also allowed Gilbane to terminate, upon forty eights hours notice, should

Roof Systems fail to perform any of the agreements contained in the contract.

**24.** The referenced "above paragraph" is the provision allowing Gilbane to terminate should Roof Systems fail to perform any of the agreements contained in the contract.

tractor or a change of position in reliance by the subcontractor. *See Accent Builders Co.*, 679 S.W.2d at 108–10.[25] Roof Systems maintains that Gilbane failed to negate any bad faith on its part or any reliance on Roof Systems's part. However, because Gilbane filed a no-evidence motion for summary judgment, the burden shifted to Roof Systems to raise a genuine issue of material fact.

Roof Systems suggests the forty-eight hour demand letter and termination notice are evidence of Gilbane's bad faith. However, Roof Systems does not explain how these two instruments are proof of "bad faith."[26] Regardless, the contract allows termination upon forty-eight hours notice. Therefore, Gilbane's compliance with contract terms negates any bad faith attributable to timing of the termination notice. Roof Systems also points us to Jarnigan's entire deposition as evidence of Gilbane's bad faith without citing any specific allegations of bad faith. After reviewing the record, we find no evidence of bad faith on Gilbane's part. *See* BLACK's LAW DICTIONARY 712 (7th ed.1999) (defining bad faith as dishonesty of belief or purpose). Finally, Roof Systems presented no evidence

that it changed its position in reliance on Gilbane's first articulated reason for termination. Therefore, Gilbane is entitled to assert termination for convenience regardless of the reason originally provided in the termination notice.

Roof Systems also notes that under the termination for convenience clause, Gilbane was required to pay Roof Systems its share of the contract amount proportionate to the percentage of work completed and other reasonable cancellation costs. Roof Systems asserts that Gilbane presented no summary judgment evidence that it paid all amounts owed to Roof Systems. However, Roof Systems bore the burden to present evidence raising a genuine issue of material fact. It is undisputed that Roof Systems had not begun installing the roofs when the contract was terminated. Instead, Jarnigan explained he spent only administrative time on the job, sent in submittals, and frequented the job site. Further, Jarnigan admitted that he had not expended any money for materials, labor, or equipment.[27] Although he had placed the order for the JMC roofing materials with the distributor, the order had

---

**25.** In *Accent Builders*, a general contractor terminated a subcontract relying on a termination for convenience clause. 679 S.W.2d 106, 108–09. The general contractor later asserted termination for cause in defense to the subcontractor's breach of contract action. *Id.* The court stated absent bad faith by the terminating party or a change of position in reliance by the terminated party, the terminating party is "not prevented from relying upon one good defense among others urged simply because he has not always put it forward." *Id.* at 110.

**26.** In his deposition, Jarnigan suggested the forty-eight hours notice was inadequate because he received the letter on a Saturday, and the next Monday was a federal holiday. However, the contract does not exclude weekends and holidays from the forty-eight hours notice period. *See Heritage Resources, Inc. v.*

*NationsBank*, 939 S.W.2d 118, 121 (Tex.1996) (stating courts give contract terms their plain, ordinary, and generally accepted meaning unless the instrument shows the parties used them in a technical or different sense).

**27.** Jarnigan testified a subcontractor, Challenge Construction, performed work on the project and incurred significant expense. Roof Systems received an invoice from Challenge for a progress payment in the amount of $29,115. However, Roof Systems had not paid the invoice and never submitted an application for payment to Gilbane. Jarnigan's understanding was Gilbane would pay the invoice, so he forwarded it to Gilbane, and Challenge submitted it directly to Gilbane as well. Therefore, Roof Systems did not prove that it expended any money for work done by Challenge.

not been released when the contract was terminated. Therefore, Jarnigan's testimony does not constitute more than a scintilla of evidence that Roof Systems was owed any share of the contract amount for work completed or any cancellation costs.

Accordingly, the trial court did not err in granting Gilbane's motion for summary judgment on Roof Systems's breach of contract claim. Roof Systems's fourth and fifth issues are overruled.

## IV. CONCLUSION

We reverse the portion of the trial court's final judgment ordering that Roof Systems take nothing on its tortious interference with contract claim against JMC, and remand this claim for further proceedings consistent with this opinion. We affirm the portion of the trial court's final judgment ordering that Roof Systems take nothing on its negligent misrepresentation and DTPA claims against JMC. We affirm the portion of the trial court's final judgment ordering that Roof Systems take nothing against Gilbane.