# NO. 12-07-00262-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROYCE BANE INVESTMENTS, INC.,* *APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *LARRY MCGINN, INDIVIDUALLY AND d/b/a MCGINN TIE AND LUMBER COMPANY,* *APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Royce Bane Investments, Inc. appeals from the trial court's order granting Larry McGinn's motion for summary judgment. In two issues, Bane argues that the trial court erred in granting summary judgment because there were material issues of fact pertaining to each of his two causes of action. We affirm.

### Background

Royce Bane Investments, Inc. (Bane) agreed to purchase sawmill equipment from Larry McGinn and McGinn Tie and Lumber Co. (collectively, McGinn).[1] The parties entered into a written agreement in which McGinn agreed to transfer equipment to Bane and made other promises, including not to compete against Bane's business, in exchange for cash and other items. Bane operated the sawmill for some time thereafter, but ultimately he stopped milling timber. Bane filed

---

[1] Each of these companies and their owners have the same litigation posture. For ease of reference, we will not distinguish between the company and the individual in our references.

a lawsuit alleging that the business failed because McGinn breached an oral contract to supply him with timber.

Bane also alleged, in his amended petition, that McGinn fraudulently induced him to enter into the contract by "fraudulently misstating the nature of the operation, its profitability, and other key material facts." After discovery, McGinn filed both traditional and no evidence motions for summary judgment. The trial court granted summary judgment, and this appeal followed.

## STANDARD OF REVIEW

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must either conclusively negate at least one essential element of the plaintiff's cause of action or conclusively establish all essential elements of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and to present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Alternately, or in addition, and after an adequate time for discovery has passed, a party without the burden of proof at trial may move for a no evidence summary judgment on the ground that the nonmovant lacks supporting evidence for one or more essential elements of its claim. TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review a no evidence motion for summary judgment under the same legal sufficiency standards we use to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Id.* at 751. More than a scintilla of evidence exists if the evidence supporting a finding rises to a level that

would enable reasonable, fair minded persons to differ in their conclusions. *Id*. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *Id*.

In both traditional and no evidence summary judgment motions, we review the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the trial court's order does not specify the grounds on which it granted summary judgment, we affirm the trial court's ruling if any of the theories advanced in the motion is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). When a party moves for both a traditional and a no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standards of Rule 166a(i). *See Ridgway*, 135 S.W.3d at 600. If the no evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id*. at 602.

## ORAL CONTRACT

In his first issue, Bane argues that McGinn violated an oral contract. Specifically, he claimed in his petition that McGinn "failed to perform a negotiated agreement" and "failed to provide a 'turn-key' investment with the profits he claimed." Bain alleged in his petition that the "negotiated agreement" included a promise by McGinn that he would "ensure lumber would continue to be provided for the mill."

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages caused by the breach. *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 442 (Tex. App.–Houston [14th Dist.] 2004, no pet.). The elements of a valid contract include (1) an offer, (2) acceptance, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network*, L.L.C., 213 S.W.3d 455, 465 (Tex. App.–Dallas 2006, pet. denied). The fifth element, that the obligations be mutual, is also called consideration. *See Fed. Sign v. Tex. S.*

3

***Univ.***, 951 S.W.2d 401, 408 (Tex. 1997). Consideration consists of benefits and detriments to the contracting parties. ***Id***. at 409. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments. ***Id***. A contract that lacks consideration lacks mutuality of obligation and is unenforceable. ***Id***.

Here, the parties entered into a written agreement for the purchase of equipment. Bane alleges that this written contract was merely a part of a larger agreement and that the larger agreement included an oral contract. However, when Bane was asked during a deposition that was part of the summary judgment record to describe the unwritten, or oral, contract between the parties, he could not articulate one. He was asked, "What were the terms of that agreement?" He responded, "No terms. That was - that was the way I do most all my business was a handshake deal type, take your word for it." He was then asked, "So there were no terms to this agreement[?]" He responded, "No." Later his attention was drawn to the part of the lawsuit where he alleged that "Defendant represented that he would make sure there was timber available for the sawmill to use." He was asked, "Are you saying that was a contract y'all had?" He responded, "No." Bane also testified that McGinn had not guaranteed he would make a specific profit, or any profit at all. McGinn asserts that the only such agreement between them was that he would purchase logs for Bane, and that Bane would pay him a commission for his efforts.

Even if Bane's inability to describe the oral agreement is not fatal to his argument, there is not a scintilla of evidence of either a meeting of the minds on the purported oral contract or of any mutuality of obligation, both of which are essential to the formation of a contract. Bane stated in his pleadings what he believed the agreement to be, that McGinn provide him with sufficient timber and that the investment would be profitable, but there is no evidence that McGinn ever agreed to these terms. Assuming evidence of McGinn's assent could be supplied by Bane's statement that there was a handshake agreement, there is no evidence from any source describing Bane's obligation under the contract.

Under Bane's formulation, McGinn agreed to meet his requirements for timber and to ensure that he made money. In exchange for this, Bane agreed to do nothing, not even to purchase his

4

requirements exclusively, or at all, from McGinn.[2]  As described, this agreement is simply a gratuitous offer by McGinn to help Bane locate timber to mill.  The oral agreement cannot be considered part of the written contract because the written contract states that it is the entire agreement between the parties.  *See Baroid Equip, Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App.–Houston [1st Dist.] 2005, pet. denied).

McGinn did not have an obligation to ensure the profitability of the enterprise or to supply timber because Bane did not give consideration for any such agreement and because the obligations were not terms of the written contract.  Therefore, the trial court properly determined that there was not a contract between the parties that covered these issues and that summary judgment was proper.  We overrule Bane's first issue.

## FRAUDULENT INDUCEMENT

Fraudulent inducement is a cause of action based on the principle that a person has a duty to refrain from inducing another to enter into a contract by using a false representation.  *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).  The elements of the cause of action are the following:

1)  The defendant made a representation to the plaintiff;
2)  The representation was material;
3)  The representation was false;
4)  When the defendant made the representation, the defendant knew the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth;
5)  The defendant made the representation with the intent that the plaintiff act on it;
6)  The plaintiff relied on the representation; and
7)  The representation caused the plaintiff injury.

*In re First Merit Bank*, 52 S.W.3d 749, 758 (Tex. 2001).

In his amended petition, Bane asserted that McGinn induced him to enter into the contract by "fraudulently misstating the nature of the operation, its profitability, and other key material facts."  On appeal, Bane argues that there are two areas in which an issue of fact was raised.  First, he asserts that McGinn made a false representation that timber would be available.  Second, Bane says that his

---

[2] Bane does not argue that this was a requirements contract.  Requirements contracts must be in writing, but do not require consideration.  *See* TEX. BUS. & COM. CODE ANN. §§ 2.201(a), 2.306(a) cmt. 2 (Vernon 1994).

"chief complaint" is that McGinn "breached his promise to 'see to it' that the mill had a supply of timber."

We have already determined that any oral agreement between the parties about supplying timber to the business was not a contract. Therefore, Bane could not rely upon it. Recasting the assertion as a fraudulent inducement claim does not change the result. The written contract between the parties does not contain any agreement about supplying timber. It does contain a merger clause that states the written agreement is the only agreement between the parties. Generally, a merger clause may serve to nullify any claimed reliance on representations alleged to have been made by a party. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180–81 (Tex. 1997). The factors to be considered in determining what weight to be given to the merger clause are the terms of the contract, the circumstances surrounding its formation, whether the parties were represented by counsel, and whether the contract was negotiated at arm's length. *Id.* at 179–80.

The nature of the relationship between the parties, the fact that Bane was represented by counsel, and that it was his counsel who drafted the agreement all point toward giving significant weight to the merger clause. Bane does not dispute this conclusion, but argues that the merger clause is not sufficiently tailored to this dispute to foreclose his fraudulent inducement claim. The clause in this case reads as follows:

> This writing embodies the entire agreement between the parties and supersedes all prior agreements and understandings, if any, relating to the Property, and may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

Other cases involving merger clauses have contained a more specific disclaimer of reliance. In *Playboy Enters., Inc. v. Editorial Cabalero, S.A. de C.V.*, 202 S.W.3d 250, 258 (Tex. App.–Corpus Christi 2006, pet. denied), the merger clause stated, "There are no representations, promises, warranties, covenants or undertakings other than those contained in this Agreement." The court held that this clause was enforceable and negated reliance on any alleged oral representations. *Id.* at 258–59. Similarly, in *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 126–28 (Tex. App.–Houston [14th Dist.] 2003, pet. denied), the court held that the plaintiff could not rely on extracontractual representations because the contract contained a merger clause and because it also

contained a provision stating, "No commitments have been made relative to bonuses, guarantees or any other special provisions, except as specifically identified herein." Because the second provision disclaimed the specific representations that were the subject of the suit, the plaintiff could not rely on them. *Id.* at 128.

In *Schlumberger*, two sophisticated corporate entities executed a purchase agreement to end a dispute. Their contract contained a clause that acknowledged disagreements between the parties and a statement that neither party relied on a statement or representation of the other, and, instead, that each relied on their own judgment. *Schlumberger*, 959 S.W.2d at 180. The supreme court held that the clause precluded a fraudulent inducement claim because it specifically disclaimed reliance on the very representations that the party claimed it relied upon. *Id.* at 181–82.

The merger clause in this case is not so specific, but any representations about supplying timber are covered by the merger clause. In his brief, Bane states that his "chief complaint is that McGinn breached his oral promise to 'see to it' that the mill had a supply of timber." This is the agreement we discussed in the previous section. The written contract does not contain any such agreement and states that it supersedes all prior agreements and understandings.

Bane argues that the oral agreement is not covered by the merger clause because the merger clause, by its terms, only applies to the "Property," that is the sawmill equipment that changed hands. But this purported timber agreement does relate to the sawmill equipment because it is, in Bane's formulation, part of the same package agreement. In fact, Bane now claims that he relied on it when he purchased the sawmill equipment. If Bane had wished to rely upon McGinn's reported agreement to provide timber, he should have deleted the disclaimer of reliance on previous agreements or understandings, or placed the timber agreement in the written contract. Because he did neither, he may not rely on the purported promise.

Finally, although it is difficult to parse his argument, Bane is apparently asserting that the timber in the area for the mill has run out, and McGinn knew this but represented that there was sufficient timber in the area.[3] The pleading on this issue is also unclear, and this claim is not

---

[3] Bane actually made the assertion, in his deposition, that McGinn lied about the timber supply in the area. He does not assert this directly on appeal and did not assert it in his pleadings. Omitting the citations to the record, Bane's brief reads as follows:

specifically pleaded. In his first petition, Bane alleged that McGinn "concealed the material fact that there was timber available with which to run the sawmill." When asked about this at his deposition, Bane said he was referring to timber on a specific tract of land controlled by McGinn, but he could not explain how McGinn concealed the timber on that land. In fact, he said that McGinn told him about it. McGinn argued in his motion for summary judgment that there was no evidence of any false statement with respect to this assertion.

Bane did not repeat the assertion about the specific tract of land in his amended petition. Nor did he specifically allege in the amended petition that McGinn misrepresented the availability of timber in the area. Instead, he alleged as follows: "As shown above, [McGinn] induced [Bane] to enter into the contract for sale by fraudulently misstating the nature of the operation, its profitability, and other key material facts." In the facts section of the pleadings, Bane states that "[a]lmost immediately, the supply of timber to the sawmill ran dry." But Bane does not allege that McGinn misrepresented the local supply of timber. When he argued the motion for summary judgment, Bane's counsel asserted, "Our factual issue is, we don't think Mr. McGinn ever intended to supply the timber." Once again, Bane did assert that the supply of timber "dried up," but he never asserted that McGinn told him there was timber in the area.

The parties were not always clear about whether they were discussing Bane's original or amended petition when they argued this matter before the trial court. Even if the trial court considered both pleadings, the only other representation that Bane pleaded was that McGinn concealed the timber on the specific tract of land. There being no evidence of that, the trial court properly concluded that there was not an issue of material fact on that assertion. Bane has not

At trial McGinn argued that he made no false, material representations that timber would be available.

As outlined above, the evidence at trial raises a fact question to the contrary. For example, Bane testified that he came to learn that the timber in the area of the mill was running out in general, and began to suspect that McGinn had known that, prompting him to sell the mill. In addition, [a witness's] testimony that McGinn made similar representations to him creates a fact question bolstering Bane's claim for fraudulent inducement.

It is not clear what fraudulent representations Bane is asserting McGinn made. McGinn's statement that he made no false representations pertains to a different issue, specifically whether he concealed a specific tract of land with timber on it from Bane. The witness's testimony touches on the issue of timber, but in the context of McGinn's providing it. And Bane's own testimony, as referenced in the brief, simply reiterates that a logger told him that hardwood was not available in that area, but does not reference statements made by McGinn.

directed this court to additional areas in which there was an issue of material fact.  Therefore, we hold that the trial court properly concluded that there was not an issue of material fact on Bane's fraudulent inducement claim.  We overrule Bane's second issue.

## DISPOSITION

Having overruled Bane's two issues, we ***affirm*** the judgment of the trial court.


  SAM GRIFFITH  
Justice


Opinion delivered September 24, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9