Affirmed in Part, Reversed and Remanded in Part, and Opinion filed March
9, 2004















Affirmed in
Part, Reversed and Remanded in Part, and Opinion filed March 9, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00083-CV

_______________

 

ROOF SYSTEMS,
INC., Appellant

 

V.

 

JOHNS MANVILLE CORPORATION AND GILBANE BUILDING COMPANY, Appellees

_______________________________________________________________________

 

On Appeal from
the 127th District Court

Harris County, Texas

Trial Court
Cause No. 99-24781

_______________________________________________________________________

 

O P I N I O N

            Appellant, Roof Systems, Inc., sued
Gilbane Building Company for breach of a roofing contract.  Roof Systems also sued Johns Manville
Corporation (“JMC”) for tortious interference with the contract, negligent
misrepresentation, and Deceptive Trade Practices Act violations.  The trial court granted summary judgment in
favor of Gilbane and JMC on all Roof Systems’s claims, and this appeal
followed.  We affirm, in part, and
reverse and remand, in part.




                                                             I.  Background

            Gilbane contracted to build two
schools for the Houston
 Independent School
 District (“HISD”).  By written agreement, Gilbane subcontracted
the roofing and sheet metal work for both schools to Roof Systems.  The subcontract required Roof Systems to
provide HISD a ten-year “No Dollar Limit” warranty on the roof systems as a
condition of final payment.

            Subsequently, JMC roofing materials
were selected for both schools.[1]  However, JMC asserted that it would not issue
its “Gold Shield Roofing System Guaranty” unless the roof systems were
installed by a JMC-certified installer. 
It is undisputed that Roof Systems has never been a JMC-certified
installer.  However, Roof Systems claims
it arranged for Total Roofing Services, Inc., a JMC-certified installer, to
install the roof systems.  According to
Roof Systems, it was assured by JMC that the warranty would issue if a JMC-certified
“sub-subcontractor” installed the roof systems. 
To the contrary, JMC denies that it approved Roof Systems’s proposed
“sub-subcontractor” arrangement.  JMC
claims it has a “roofer of record” policy; under this policy, it will issue a
warranty only if the JMC-certified installer also has the roofing contract with
the general contractor.[2]

            In any event, JMC eventually
informed Gilbane that the warranty would not issue under any
circumstances.  On January 14, 1999,
Gilbane sent Roof Systems a letter stating:




consider this your 48 hour formal notice of non-conformance of your
contractual requirements.  We were
contacted by [JMC] who stated that they will not provide a warranty if we
contract with your company . . .  Should
you not be able to provide both a written acknowledgement from the manufacturer
warranting the work per plans and specifications . . . within the next 48
hours, we will contract with an approved contractor to fulfill your contract
obligations and hold you responsible for any additional costs.

            Roof Systems received the letter on
Saturday, January 16, 1999.  In response,
Scott Jarnigan, its president, contacted several JMC representatives to obtain
an acknowledgment that the warranty would issue if a JMC certified
“sub-subcontractor” installed the roof systems. 
He claims he received conflicting responses.  Nevertheless, he then asked Gilbane if
roofing materials from an alternate manufacturer would be acceptable.  By letter dated January 18, 1999, Gilbane
agreed to forward this request to the architect but stated it was not
optimistic about the response.  Gilbane
reminded Roof Systems that the forty-eight hour deadline imposed in its January
14, 1999 letter remained in effect.

            On January 19, 1999, JMC delivered a
letter to Total Roofing stating generally that Total Roofing is qualified to
convey JMC’s warranty “in accordance with the Johns Manville Certified Roofing
Contractor (JMCRC) agreement,” and the proposed roof systems are eligible for
the warranty “when installed in accordance with JM’s Guarantee and
Specification requirements.”  A copy of
this letter was sent to Gilbane.  The
parties disagree whether JMC’s letter constituted an acknowledgment that the
warranty would issue if Total Roofing installed the roof systems under Roof
Systems’s proposed “sub-subcontractor” arrangement.  Regardless, Gilbane received the letter after
the forty-eight hour deadline had passed. 
On the same day, Roof Systems received written notice from Gilbane that
it was contracting with another company to install the roof systems because
Roof Systems failed to provide a written warranty acknowledgment.

            Roof Systems sued JMC for tortious
interference with contract, negligent misrepresentation, and DTPA
violations.  JMC filed two separate
motions for summary judgment: one addressing the tortious interference claim,[3] and
one addressing the negligent misrepresentation and DTPA claims.  The trial court granted both motions.  Roof Systems also sued Gilbane for breach of
contract.  The trial court granted a no-evidence
motion for 

 class=Section2>

summary
judgment filed by Gilbane.  The trial
court then signed a final judgment that Roof Systems take nothing against JMC
and Gilbane.[4]

II.  JMC’s Motion For Summary
Judgment

            In its first three issues, Roof
Systems contends the trial court erred in granting summary judgment in favor of
JMC.

A.        Standard of Review 

            A defendant, as movant, is entitled
to summary judgment if it (1) disproves at least one element of each of the
plaintiff’s theories of recovery, or (2) pleads and conclusively establishes
each essential element of an affirmative defense thereby rebutting the
plaintiff’s cause of action.  Burroughs v. APS Int’l, Ltd., 93 S.W.3d
155, 159 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 679 (Tex.
1979)).  Our standard for reviewing
summary judgments is well-established.  Id. (citing Nixon v. Mr.
Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). 
The summary judgment movant has the burden of showing that there
are no genuine issues of material fact and that it is entitled to judgment as a
matter of law.  Id.  In deciding whether there is a material
disputed fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true.  Id.  Every reasonable inference must be indulged
in favor of the non-movant and any doubts resolved in its favor.  Id.

B.        Roof Systems’s Claims

            1.         Tortious
Interference with Contract

            In its first issue, Roof Systems
contends the trial court erred in granting summary judgment on its tortious
interference with contract claim.  To
recover for tortious interference 

 class=Section3>

with
contract, a plaintiff must prove (1) the existence of a contract subject to
interference, (2) a willful and intentional act of interference, (3) that the
act was a proximate cause of the plaintiff’s damages, and (4) actual damages or
loss.  Texas Beef Cattle Co. v. Green, 921 S.W.2d
203, 210 (Tex.
1996).  Here, the allegedly tortious
interference was JMC’s statement to Gilbane that it would not issue the
warranty.  

            In its motion for summary judgment,
JMC does not contend there are no fact issues relative to the elements of Roof
Systems’s tortious interference claim.[5]  Instead, JMC asserts the affirmative defense
of legal justification.  See id. (recognizing justification is an
affirmative defense to tortious interference with contract).  JMC contends it was legally justified in
telling Gilbane it would not issue the warranty because the statement was true
based on its “roofer of record” policy.  See Fin. Review Servs. v. Prudential Ins.
Co. of Am., 50 S.W.3d 495, 505 (Tex. App.—Houston [14th Dist.] 1998), aff’d, 29 S.W.3d 74 (Tex. 2000) (stating
that giving truthful information to a third party does not constitute improper
interference with contractual relations); Restatement
(Second) of Torts § 772 (1979);[6] see also Robles v. Consolidated Graphics,
Inc., 965 S.W.2d 552, 561 (Tex. App.—Houston [14th Dist.] 1997, pet.
denied) (citing section 772 and recognizing party is justified to interfere with
prospective business relationship by providing truthful information).

            On appeal, JMC also argues it was
legally justified to tell Gilbane it would not issue the warranty because it
was entitled to change its policy at any time,[7] and it had
no obligation 

 class=Section4>

to
issue the warranty.[8]  We question whether mere recantation of an
earlier statement that the warranty would be issued to a third party (HISD)
constitutes a willful and intentional act of interference.  However, JMC presented only the “truth”
defense in its motion for summary judgment. A motion for summary judgment must
expressly state the grounds therefor.  Tex. R. Civ. P. 166a(c); McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 341 (Tex.
1993).  We are limited to those grounds
expressly set forth in the motion to determine whether the summary judgment was
properly granted.  McConnell, 858 S.W.2d at 343. 
Nevertheless, JMC asserts we may consider its other grounds because they
are encompassed within the general “legal justification” ground raised in its
motion, and Roof Systems failed to specially except.  We disagree.

            A special exception is required if a
non-movant wishes to complain on appeal that the movant’s grounds were unclear
or ambiguous.  Id.
at 342.  However, when the motion for
summary judgment clearly presents certain grounds but not others, a non-movant
is not required to except.  Id.[9]  Here, Roof Systems was not required to
specially except because JMC presented one specific, narrow ground for summary
judgment: it was legally justified in telling Gilbane it would not issue the
warranty because the statement was true based on its “roofer of record” policy.[10]  Therefore, we will consider whether JMC was
entitled to summary judgment on this ground only.

 class=Section5>

            In support of its motion for summary
judgment, JMC presented the affidavit of its employee, Tom Soder.  Soder averred that JMC will provide its
warranty to a JMC-certified applicator, and the applicator must be the “roofer
of record” as shown in the agreement between the general contractor and the
roofing subcontractor.  Soder further
averred that JMC was unable to provide Roof Systems the warranty because it was
not a JMC-certified applicator.  JMC also
presented the deposition of Dave Carl, its representative in charge of
installer certification.  Carl was
unaware of any circumstances where JMC issued a warranty when the work was
performed by a “sub-subcontractor.”  He
explained that issuing a warranty in such circumstances would violate JMC’s
“roofer of record” policy, although he admitted the policy is unwritten.  He testified that Roof Systems’s proposed
arrangement would satisfy JMC’s policy only if Total Roofing had the roofing
contract with Gilbane.[11]

            In contrast, there is evidence a JMC
representative stated that as long as the roof systems were installed by a
JMC-certified installer, JMC would issue the warranty even if Roof Systems had
the contract with Gilbane.  In his
deposition, Jarnigan testified that before he submitted proposed roofing
manufacturers to Gilbane, he contacted JMC representatives and was told the
warranty would issue if he “sub-subcontracted” to a certified installer.[12]  Jarnigan further testified that RSI, a JMC
distributor, told him it had also confirmed with JMC that the warranty would
issue as long as Roof Systems subcontracted to a certified installer.

            However, after JMC material was
chosen, Soder informed Gilbane the warranty would not issue.  Subsequently, Jarnigan, several Gilbane
representatives, and Soder had a teleconference.  According to Jarnigan, during the
teleconference, Soder reiterated that the 

 class=Section6>

warranty
would not issue.  Subsequently, Soder
said he had not understood Roof Systems would be subcontracting to a certified
applicator, and as long as Roof Systems was subcontracting to a certified applicator,
the warranty would issue.[13]

            After this teleconference, Soder
again informed Gilbane that the warranty would not issue under any
circumstances, prompting Gilbane’s January 14, 1999 letter demanding that Roof
Systems provide a warranty acknowledgment within forty-eight hours.  According to Jarnigan, he called Soder who
said he “went all the way to legal,” and under no circumstances would JMC issue
the warranty even if Roof Systems subcontracted to a certified applicator.  However, Jarnigan testified that he then
contacted JMC’s home and regional offices and was told his proposed arrangement
was acceptable as long as the
“sub-subcontractor” was a certified applicator.[14]  Thus, according to Jarnigan, he received
conflicting responses when he tried to obtain a warranty acknowledgment as
demanded by Gilbane.

            In addition to this testimony, Roof
Systems relies on Jarnigan’s affidavit to attack the motion for the summary
judgment.  Jarnigan swore he has been the
owner of two other companies that were
JMC certified installers but was never aware of any “roofer of record” policy,
and if it did exist, it was never enforced. 
However, his lack of knowledge does not necessarily refute the existence
of the “roofer of record” policy. 
Finally, Roof Systems argues that the January 19, 1999 letter from JMC
to Total Roofing is evidence that JMC intended to issue the warranty.[15]  However, this letter merely proves that Total
Roofing was a certified JMC-installer and qualified to convey the warranty if
it complied with JMC’s roofing contractor agreement and the roof systems met
certain JMC requirements.  The letter is
not assurance that the warranty would issue in this particular case under Roof
Systems’ proposed arrangement. 
Nevertheless, Jarnigan’s testimony creates a fact issue on whether the
warranty would issue.

            Jarnigan’s testimony regarding (1)
JMC’s representations when he initially inquired about the warranty, (2)
Soder’s assurance during the teleconference, and (3) the representations by at
least some JMC representatives when Jarnigan tried to obtain the warranty
acknowledgment, raises a genuine issue of material fact on the truthfulness of
JMC’s statement that it would not issue the warranty.  Accordingly, the trial court erred in
granting summary judgment on Roof Systems’s tortious interference claim against
JMC.  Roof Systems’s first issue is
sustained.

            2.         Negligent
Misrepresentation

            In its second issue, Roof Systems
contends that summary judgment was improper on its negligent misrepresentation
claim. The elements of a claim for negligent misrepresentation are as follows:
(1) the representation is made by a defendant in the course of his business, or
in a transaction in which it has a pecuniary interest; (2) the defendant
supplies false information for the guidance of others in their business; (3)
the defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and (4) the plaintiff suffers pecuniary loss by
justifiably relying on the representation. 
Fed. Land Bank Ass’n v. Sloane,
825 S.W.2d 439, 442 (Tex.
1991).  In its motion for summary
judgment, JMC challenged whether it had supplied false information.[16]  JMC argued that 

 class=Section7>

Roof
Systems’s negligent misrepresentation claim was impermissibly based on a
promise of future conduct—whether it would issue a warranty when the roofing
work was complete.  

            The “false information” contemplated
in a negligent misrepresentation case is a misstatement of existing fact, not a
promise of future conduct.  See Allied Vista, Inc. v. Holt, 987
S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  A promise to act or not to act in the future
cannot form the basis of a negligent misrepresentation claim.  See
Miksch v. Exxon Corp., 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.]
1998, pet. denied).  The plaintiff must
prove that the defendant misrepresented an existing fact in the course of the
defendant’s business.  Id.

            Roof Systems contends JMC
misrepresented an existing fact by telling Gilbane it had a “roofer of record”
policy which would preclude it from issuing the warranty.  As we previously discussed, JMC refers to its
“roofer of record” policy as proof that the statement to Gilbane was true.  However, there is no evidence that JMC ever
told Gilbane it had a “roofer of record” policy.  Instead, the alleged misrepresentation is
JMC’s statement to Gilbane that it would not
issue the warranty.

            The evidence establishes that this
statement was a representation regarding a future act.  According to the contract between Gilbane and
Roof Systems, Roof Systems agreed to provide the warranty “as a condition
precedent to final payment.”  Roof
Systems apparently does not dispute that the warranty would not issue until the
roof systems were installed.  Therefore,
while there is a fact issue on the truthfulness of JMC’s statement, it is,
nonetheless, a representation regarding future conduct.  See
Allied Vista, Inc., 987 S.W.2d at 141 (holding defendant’s representations
that it would provide plaintiff the equipment needed to start a plant and pay
plaintiff a salary while starting the plant did not support negligent
misrepresentation claim because they were not misrepresentations of existing
fact).[17]

            Therefore, JMC negated the “false
information” element of the negligent misrepresentation claim as a matter of
law.  Accordingly, the trial court did
not err in granting summary judgment on Roof Systems’s negligent
misrepresentation claim.  Roof Systems’s
second issue is overruled.

            3.         DTPA
Violations

            In its third issue, Roof Systems
argues the trial court erred in granting summary judgment on its DTPA
claim.  Specifically, Roof Systems urges
that fact issues exist as to whether Roof Systems qualifies as a consumer under
the DTPA.  See Brown v. Bank of Galveston, N.A., 963 S.W.2d 511, 513 (Tex. 1998) (recognizing
plaintiff must establish consumer status as initial element of a DTPA claim).

            Under the DTPA, a consumer is
defined as an individual, partnership, or corporation who seeks or acquires, by
purchase or lease, any goods or services. 
Tex. Bus. & Com. Code Ann.
§ 17.45(4) (Vernon 2002); see Cameron v.
Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981). 
To qualify as a consumer, a plaintiff must prove that (1) it sought or
acquired the goods or services by purchase or lease, and (2) the goods or
services form the basis of the complaint. 
Cameron, 618 S.W.2d at 539; Vinson & Elkins v. Moran, 946 S.W.2d
381, 406–07 (Tex. App.—Houston [14th Dist.] 1997, writ dism’d by agr.).  If either requirement is lacking, the person
aggrieved by a deceptive act or practice must rely on the common law or some
other statutory provision for redress.  Cameron, 618 S.W.2d at 539.  When the underlying facts necessary to
determine consumer status are not in dispute, consumer status under the DTPA is
a question of law.  Moran, 946 S.W.2d at 406.

            In its motion for summary judgment,
JMC asserted that Roof Systems is not a consumer because its complaint is not
based on any goods or services sought or acquired from JMC.  Instead, the complaint is based on JMC’s
refusal to give a warranty.  In its
response, Roof Systems merely countered that it sought goods—roofing materials.[18]  However, Roof Systems’s response only
addressed the first part of the consumer test—whether it sought or acquired
goods or services, whereas JMC’s motion for summary judgment addressed the
second part of the test—whether Roof Systems’s complaint is based on any goods
or services sought or acquired.[19]

            A refusal to sell goods or services
is not a complaint based on the goods or services for purposes of DTPA consumer
status.  For example, in Brittan Communications International Corp.
v. Southwestern Bell Telephone Co., a reseller of telephone services
complained that the defendant carrier wrongfully suspended billing and
collection services it performed for the reseller and failed to reinstate the
services.  313 F.3d 899, 902–03 (5th Cir.
2002).  The court held the reseller did
not qualify as a DTPA consumer despite the carrier’s representation that the
services would be reinstated because the reseller’s complaint was not based on
any problems with the quality of the billing or collection services
themselves.  Id.
at 907–08.  In Malone v. E.I. Du Pont De Nemours & Co., the plaintiffs, who
were engaged in the paint resale business, bought surplus paint from Du Pont
and resold it in Lebanon.  8 S.W.3d 710, 712–13 (Tex. App.—Fort Worth
1999, pet. denied). They asserted a DTPA complaint against Du Pont for refusing
to sell them any more paint despite previously representing it would sell them
all its surplus paint.  Id.
at 713.  They further complained that Du
Pont told them the paint could no longer be shipped into Lebanon, but then sold the paint to someone
else, who resold in Lebanon.  Id.  The court held that the plaintiffs were not
DTPA consumers because their complaints were not based on any fault in the
goods, but merely upon Du Pont’s failure to sell as much as they wanted to buy.  Id.
at 715; see also Footloose, Inc. v.
Stride Rite Children’s Group, Inc., 923 F. Supp. 114, 115–17 (N.D. Tex. 1995)
(holding shoe store was not a DTPA consumer because its complaint that shoe
company discontinued selling it shoes was not based on any fault with the
shoes, but only on discontinuation of the sales relationship).

            Here, Roof Systems’s DTPA claim is
not a complaint about the terms or breach of any warranty.[20]  Rather, Roof Systems complains that JMC
refused to issue a warranty, and told Gilbane it would not do so, despite its
previous representations.[21]  As such, the complaint is not based on any
goods or services that Roof Systems sought or acquired from JMC.  See
Miller v. KFC Corp., No. Civ. A. 3:99-CV-1566-D, 1999 WL 820389, at *3–4
(N.D. Tex. Oct. 13, 1999) (holding plaintiffs were not DTPA consumers because
complaint that fast food restaurant defendants refused to award them a
franchise and made misrepresentations during the negotiations for the franchise
was not based on the goods or services they sought from defendants).

            Therefore, Roof Systems was not a
consumer under the DTPA as a matter of law, and summary judgment was proper on
its DTPA claims.  Accordingly, Roof
Systems’s third issue is overruled.

 

III.  Gilbane’s No-Evidence
Motion for Summary Judgment

            In its fourth and fifth issues, Roof
Systems contends the trial court erred in granting Gilbane’s no-evidence motion
for summary judgment on Roof Systems’s breach of contract claim.

A.        Standard of Review 

            After adequate time for discovery, a
party, without presenting summary judgment evidence, may move for summary
judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden
of proof at trial.  Tex. R. Civ. P. 166a(i).  The court must grant the motion unless the
respondent produces summary judgment evidence raising a genuine issue of
material fact.  Id.  In reviewing a no-evidence summary judgment,
we examine the record in the light most favorable to the nonmovant, looking to
see if it presented more than a scintilla of evidence raising a genuine issue
of material fact on the challenged elements of its claim.  See
Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). 
More than a scintilla of evidence exists when the evidence “rises to a
level that would enable reasonable and fair-minded people to differ in their
conclusions.”  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).

 








B.        Breach Of Contract Claim

            In its motion for summary judgment,
Gilbane urged there is no evidence that (1) Roof Systems was able and ready to
proceed with the contract, or (2) Gilbane breached the contract.  Because the summary judgment order does not
specify the grounds upon which the ruling was granted, we affirm the judgment
on any meritorious theory.  See Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989).

            The following are the four elements
of a breach of contract action: (1) the existence of a valid contract; (2)
performance or tendered performance by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages sustained by the plaintiff as a
result of the breach.  Renteria v. Trevino, 79 S.W.3d 240, 242
(Tex. App.—Houston [14th Dist.] 2002, no pet.).  Roof Systems alleges that Gilbane breached
the contract by terminating it.  In its
motion for summary judgment, Gilbane contended it properly terminated the
contract because (1) Roof Systems failed to comply with the progress schedule;[22] (2)
Roof Systems failed to perform any of the agreements contained in the contract;[23] and
(3) the contract contained a termination for convenience clause.  We find the third contention meritorious.

            The termination for convenience
clause provided:

9.4.1   Notwithstanding the above
paragraph,[24]
[Gilbane] reserves the right to terminate this Agreement for its convenience
upon written notice to [Roof Systems]. 
In such instance, [Roof Systems] will be paid its share of the contract
amount proportionate to the percentage of its work completed and other
reasonable cancellation costs incurred as a result of said termination. No
payments shall be made for anticipated overhead and profit.  Prior to making any payments under this
clause, [Gilbane] shall have the right to audit the records of [Roof Systems].

 class=Section9>

            A termination for convenience clause
allows termination with or without cause and bars a claim for wrongful termination.  See 4N
Intern., Inc. v. Metropolitan Transit Auth., 56 S.W.3d 860, 863 (Tex. App.—Houston [1st Dist.] 2001,
pet. denied) (citing Accent Builders Co.
v. S.W. Concrete Sys., Inc., 679 S.W.2d 106, 108–09 (Tex. App.—Dallas 1984,
writ ref’d n.r.e.)).  Quite simply,
Gilbane was allowed to terminate Roof Systems’s contract for convenience—with
or without cause.

            Nevertheless, Roof Systems contends
Gilbane cannot rely on the termination for convenience clause because Gilbane
specifically cited Roof Systems’s failure to maintain the progress schedule in
its termination notice.  However, a
general contractor is not bound by its first announced reason for terminating a
subcontract absent bad faith by the general contractor or a change of position
in reliance by the subcontractor.  See Accent Builders Co., 679 S.W.2d at 108–10.[25]  Roof Systems maintains that Gilbane failed to
negate any bad faith on its part or any reliance on Roof Systems’s part.  However, because Gilbane filed a no-evidence
motion for summary judgment, the burden shifted to Roof Systems to raise a
genuine issue of material fact. 

            Roof Systems suggests the
forty-eight hour demand letter and termination notice are evidence of Gilbane’s
bad faith.  However, Roof Systems does
not explain how these two instruments are proof of “bad faith.”[26]  Regardless, the contract allows termination
upon forty-eight hours notice. 
Therefore, Gilbane’s compliance with contract terms negates any bad
faith attributable to timing of the termination notice.  Roof Systems also points us to Jarnigan’s
entire deposition as evidence of Gilbane’s bad faith without citing any
specific allegations of bad faith.  After
reviewing the record, we find no evidence of bad faith on Gilbane’s part.  See
Black’s Law Dictionary 712 (7th
ed. 1999) (defining bad faith as dishonesty of belief or purpose).  Finally, Roof Systems presented no evidence
that it changed its position in reliance on Gilbane’s first articulated reason
for termination.  Therefore, Gilbane is
entitled to assert termination for convenience regardless of the reason
originally provided in the termination notice.

            Roof Systems also notes that under
the termination for convenience clause, Gilbane was required to pay Roof
Systems its share of the contract amount proportionate to the percentage of
work completed and other reasonable cancellation costs.  Roof Systems asserts that Gilbane presented
no summary judgment evidence that it paid all amounts owed to Roof Systems.  However, Roof Systems bore the burden to
present evidence raising a genuine issue of material fact.  It is undisputed that Roof Systems had not
begun installing the roofs when the contract was terminated.  Instead, Jarnigan explained he spent only
administrative time on the job, sent in submittals, and frequented the job
site.  Further, Jarnigan admitted that he
had not expended any money for materials, labor, or equipment.[27]  Although he had placed the order for the JMC
roofing materials with the distributor, the order had not been released when
the contract was terminated.  Therefore,
Jarnigan’s testimony does not constitute more than a scintilla of evidence that
Roof Systems was owed any share of the contract amount for work completed or
any cancellation costs.

            Accordingly, the trial court did not
err in granting Gilbane’s motion for summary judgment on Roof Systems’s breach
of contract claim.  Roof Systems’s fourth
and fifth issues are overruled.

IV.  Conclusion

            We reverse the portion of the trial
court’s final judgment ordering that Roof Systems take nothing on its tortious
interference with contract claim against JMC, and remand this claim for further
proceedings consistent with this opinion. 
We affirm the portion of the trial court’s final judgment ordering that Roof
Systems take nothing on its negligent misrepresentation and DTPA claims against
JMC.   We affirm the portion of the trial
court’s final judgment ordering that Roof Systems take nothing against Gilbane.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

                                                                                    

 

Judgment
rendered and Opinion filed March 9, 2004.

Panel
consists of Justices Anderson, Fowler, and Seymore.

 

 











            [1]  Pursuant to the subcontract, Roof Systems submitted specifications of
roofing materials from different manufacturers. At the project architect’s
insistence, JMC roofing materials were chosen.





            [2]  It is undisputed that Roof Systems—not Total Roofing—had the roofing
contract with Gilbane.





            [3]  JMC also asserted the statute of limitations in this motion, but
summary judgment was not granted on that ground, and limitations is not an
issue on appeal.





            [4]  Roof Systems also sued Tom Soder, a JMC employee, individually, Total
Roofing, and David Lawrence of Total Roofing, but they were later
non-suited.  In the final judgment, the
court ordered that Roof Systems take nothing against Tom Soder, David Lawrence,
and “Total Roofing, Inc.”  Roof Systems
does not appeal from that portion of the judgment.





            [5]  JMC concedes for purposes of appeal that its statement caused Gilbane
to terminate the contract.





            [6]  Section 772 provides “One who intentionally causes a third person not
to perform a contract or not to enter into a prospective contractual relation
with another does not interfere improperly with the other’s contractual
relation, by giving the third person (a) truthful information, or (b) honest
advice within the scope of a request for the advice.”  Restatement
(Second) of Torts § 772.





            [7]  Specifically, pursuant to its Certified Roofing Contractor Agreement,
JMC asserts that it could change its policy unless it had already accepted a complete
contract award notice and half the cost of the warranty, which had not occurred
in this case.





            [8]  Specifically, pursuant to its Certified Roofing Contractor Agreement,
JMC asserts that it was not obligated to issue a warranty until the certified
installer met a number of conditions, and neither Roof Systems nor Total
Roofing had met the conditions.





            [9]  As the Texas Supreme Court recognized, “Why should a non-movant be
required to except to a motion expressly presenting certain grounds and not
others?”  The only effect of such a rule
would be to alert the movant to additional unasserted summary judgment
grounds.  McConnell, 858 S.W.2d at 342. 





            [10]  The purpose of the requirement that a motion for summary judgment state
specific grounds is to provide the opposing party with adequate information for
opposing the motion and define the issues for purposes of summary
judgment.  See Westchester Fire Ins. Co. v. Alvarez, 576 S.W.2d 771, 772 (Tex.
1978), overruled on other grounds by City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 673 (Tex. 1979).  Here,
JMC’s claims that it could change its policy and had no obligation to issue the
warranty because certain conditions were not met are quite different from its
claim that its statement to Gilbane was true based on the “roofer of record”
policy.  As Roof Systems asserts, it
should not be forced to challenge these alternate grounds on appeal when it had
no opportunity to present controverting evidence.





            [11]  Carl further stated that he explained JMC’s policy to Jarnigan with the
following, “[A]s I understand it, Total Roof Services is going to be the
contractors to put the roof on and the contractor of record and the whole nine
yards.”  However, Carl also testified
that he suspected the warranty might issue under Roof Systems’s proposed
arrangement regardless of the “roofer of record” policy because JMC would not
necessarily “keep track” of who the general contractor is on a particular
project.





            [12]  Jarnigan testified he “thinks” Dave Carl was one of the JMC representatives
to whom he spoke.





            [13]  Jarnigan reiterated the contents of this conversation in his affidavit.





            [14]  Jarnigan’s testimony is somewhat vague as to the identity of these
representatives although apparently Carl was one of them.  Nevertheless, his testimony is evidence that
at least some JMC representatives intended that the warranty would issue under
Roof Systems’s proposed arrangement even after Soder told Jarnigan it would not
issue.





            [15]  Roof Systems terms the letter a “warranty acknowledgment letter.”





            [16]  Although JMC asserts Roof Systems failed to properly plead a cause of
action for negligent misrepresentation, it moved for summary judgment on the
claim out of an abundance of caution and concedes it had fair notice of the
claim.  Therefore, we will treat the
claim as if it had been raised by the pleadings and address the summary
judgment on the claim.  See Roark v. Stallworth Oil & Gas, Inc.,
813 S.W.2d 492, 495 (Tex. 1991) (recognizing rule that unpleaded claims tried
by express or implied consent are treated as if raised by the pleadings should
apply to issues raised in a motion for summary judgment).





            [17]  Further, JMC’s representation concerned future conduct because issuance
of the warranty was dependent upon a condition precedent, although the parties
disagree on what the condition precedent was. 
Nevertheless, accepting Roof Systems’s version of the facts as true,
issuance of the warranty was, at a minimum, precedented upon installation by a
JMC-certified installer.  See Airborne Freight Corp. Inc. v. C.R. Lee
Enters., 847 S.W.2d 289, 298 (Tex. App.—El Paso 1992, writ denied)
(concluding employer’s statement to independent contractor, “as long as you do
your job, you’ll have a job” did not support negligent misrepresentation claim,
although contractor was later fired, because it was a promise of future conduct
qualified by a condition precedent).





            [18]  In its petition, Roof Systems only pled it is a consumer because it
sought to purchase goods.





            [19]  Both parties raise new arguments on appeal.  Roof Systems now suggests it sought a service
because the warranty was an integral, inseparable part of the roofing materials
transaction, and it would not have sought the roofing materials if the warranty
were not available.  See Tex. Bus. & Com.
Code Ann. § 17.45(2) (Vernon 2002) (defining services under the DTPA to
include those furnished in connection with the sale or repair of goods).  However, a non-movant must expressly present
to the trial court any reason that would defeat the movant’s right to summary
judgment by filing a written answer or response to the motion.  Tex. R. Civ. P. 166a(c); McConnell, 858 S.W.2d at 341.  In addition, JMC now argues Roof Systems is
not a consumer because (1) it sought an intangible right—the status of a
JMC-certified installer, (2) it was merely an incidental beneficiary of the
warranty which would run directly to HISD, and (3) it never ordered any roofing
materials.  Even if we could consider all
these new arguments, we need not do so because the ground JMC did present in
its motion is meritorious.





            [20]  Roof Systems does not complain of any misrepresentations regarding the
terms of a warranty, failure to honor a warranty, or breach of a warranty.  See,
e.g., Jones v. Star Houston, Inc., 45 S.W.3d 350, 356–57 (Tex. App.—Houston [1st Dist.] 2001,
no pet.) (concluding car owner who complained that car dealer’s warranty
repairs further damaged the car was DTPA consumer); Mahsha, Inc. v. Martinez, No. 05-01-01275-CV (Tex. App.—Dallas June 17, 2002, no
pet.) (not designated for publication), 2002 WL 1308781, at *2–4 (finding DTPA
violation in car seller’s failure to honor warranty to repair car).





            [21]  Although JMC contends that Roof Systems’s DTPA action is based solely
on JMC’s refusal to issue a warranty, in its petition, Roof Systems also
complains about JMC’s alleged representations that it would issue the warranty
under Roof Systems’s proposed arrangement. 
Nevertheless, these representations concern whether JMC would issue the
warranty; they do not concern the terms or breach of the subject warranty.





            [22]  The contract allowed Gilbane to terminate, upon forty-eight hours
notice, should Roof Systems fail to maintain Gilbane’s progress schedule. The
contract further provided that “time is of the essence.”





            [23]  The contract also allowed Gilbane to terminate, upon forty eights hours
notice, should Roof Systems fail to perform any of the agreements contained in
the contract.





            [24]  The referenced “above paragraph” is the provision allowing Gilbane to
terminate should Roof Systems fail to perform any of the agreements contained
in the contract.





            [25]  In Accent Builders, a general
contractor terminated a subcontract relying on a termination for convenience
clause.  679 S.W.2d 106, 108–09.  The general contractor later asserted
termination for cause in defense to the subcontractor’s breach of contract
action.  Id.  The court stated absent bad faith by the
terminating party or a change of position in reliance by the terminated party,
the terminating party is  “not prevented
from relying upon one good defense among others urged simply because he has not
always put it forward.”  Id.
at 110.





            [26]  In his deposition, Jarnigan suggested the forty-eight hours notice was
inadequate because he received the letter on a Saturday, and the next Monday
was a federal holiday.  However, the
contract does not exclude weekends and holidays from the forty-eight hours
notice period.  See Heritage Resources, Inc.
v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996) (stating courts give
contract terms their plain, ordinary, and generally accepted meaning unless the
instrument shows the parties used them in a technical or different sense).





            [27]  Jarnigan testified a subcontractor, Challenge Construction, performed
work on the project and incurred significant expense.  Roof Systems received an invoice from
Challenge for a progress payment in the amount of $29,115.  However, Roof Systems had not paid the
invoice and never submitted an application for payment to Gilbane.  Jarnigan’s understanding was Gilbane would
pay the invoice, so he forwarded it to Gilbane, and Challenge submitted it
directly to Gilbane as well.  Therefore,
Roof Systems did not prove that it expended any money for work done by
Challenge.